IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

MAY -1 2015

CLERK_____
SO. DIST. OF GA

| | |
|---|---|
| TERRENCE E. MACK AND ) | |
| LUCINDA MACK, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION FILE NO. _____ |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | CV415-112 |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## COMPLAINT

Plaintiffs Terrence E. Mack ("Mr. Mack") and Lucinda Mack ("Mrs. Mack") allege:

1.

This is an action arising under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et. seq. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b).

2.

Plaintiffs have filed contemporaneously herewith a Disclosure Statement pursuant to S.D. Ga. L.R. 7.1.1.

3.

Plaintiffs' place of residence is in Bryan County, Georgia.

4.

At all times mentioned herein, Defendant United States of America, through its agency the Department of Veterans Affairs (the "VA"), owned and operated both the VA community clinic located at 325 West Montgomery Crossroad, Savannah, Georgia, 31406 (the "VA's

Savannah Clinic"), and the Ralph H. Johnson VA Medical Center located at 109 Bee Street, Charleston, South Carolina 29401 (the "Charleston VAMC").

5.

A substantial part of the events or omissions giving rise to this cause of action occurred in the Savannah Division of the Southern District of Georgia. Venue is proper in this Court.

6.

Timely and adequate administrative claim notices were sent to and received by the Office of Regional Counsel, Department of Veterans Affairs, regarding the claims made herein.

7.

Notice of the denial of Plaintiffs' claims was sent to Plaintiffs' counsel on January 30, 2015.

8.

Plaintiff Lucinda Mack has been married to Terrence E. Mack since August 9, 2009.

9.

Mr. Mack's VA medical records state that on May 22, 2012, Mr. Mack was transferred to the Charleston VAMC from Memorial University Medical Center ("MUMC") for treatment of methicillin-sensitive Staphylococcus aureus ("MSSA") pneumonia and MSSA bacteremia, and evaluation of a tracheostomy. At the time of the transfer, Mr. Mack was on vancomycin and moxiflocaxin for treatment of the MSSA infection.

10.

L.W. Preston Church, M.D. ("Dr. Church") and Michelle Rodriguez Coste, M.D. ("Dr. Coste") were infectious disease specialists at the Charleston VAMC responsible for treating Mr.

Mack's MSSA infection. They switched Mr. Mack from vancomycin and moxiflocaxin to ceftriaxone 2g I.V. Q 24 hours for 2 weeks.

11.

To effectively treat a patient with an MSSA infection, antibiotics such as ceftriaxone must be prescribed for at least four weeks.

12.

On May 25, 2012, Mr. Mack was discharged home from the Charleston VAMC with a peripherally inserted central catheter ("PICC") in place for continued administration of the ceftriaxone.

13.

After his discharge from the Charleston VAMC, Mr. Mack was under the care of Deborah Ligon, M.D. ("Dr. Ligon"), a primary care physician employed at the VA's Savannah Clinic.

14.

Additionally, the VA authorized and contracted with a home health nursing agency to maintain Mr. Mack's PICC line, and Dr. Church and Dr. Coste were responsible for continuing to monitor and treat Mr. Mack's MSSA infection.

15.

Mr. Mack's VA medical records include notes from the home health nursing agency documenting that between Mr. Mack's discharge from the Charleston VAMC on May 25, 2012 and June 7, 2012, Mr. Mack experienced balance problems, an unsteady gait, and back pain which radiated into his torso.

16.

The combination of Mr. Mack's balance problems, unsteady gait, radiating back pain, and history of MSSA infection were suggestive of spinal cord impingement from osteomyelitis of the spine, an infectious process that can result from metastasis of an MSSA infection to the spine and can cause permanent paralysis if not diagnosed and treated in a timely manner.

17.

The notes from the home health nursing agency documenting Mr. Mack's balance problems, unsteady gait, and radiating back pain were made part of the VA's electronic medical records for Mr. Mack.

18.

Once entered into the VA's electronic medical records for Mr. Mack, the notes from the home health nursing agency documenting Mr. Mack's balance problems, unsteady gait, and radiating back pain were readily available to Dr. Ligon, Dr. Church, and Dr. Coste.

19.

Dr. Ligon, Dr. Church, and Dr. Coste either knew or should have known about Mr. Mack's symptoms noted by the home health nursing agency and entered into the VA's electronic medical records for Mr. Mack.

20.

Mr. Mack's electronic medical records from the VA include notes from visits and telephone calls that Mr. Mack made to the VA's Savannah Clinic in June and July, 2012 showing that he continued to complain of worsening back pain.

21.

Mr. Mack's symptoms following his discharge from the Charleston VAMC suggest that his antibiotic therapy prescribed by Dr. Church and Dr. Coste was insufficient to control the MSSA infection, and that the MSSA infection metastasized to Mr. Mack's spine.

22.

Dr. Ligon, Dr. Church, and/or Dr. Coste either knew or should have known about Mr. Mack's balance problems, unsteady gait, complaints of radiating back pain, and history of MSSA infection.

23.

Based on Mr. Mack's symptoms following his discharge from the Charleston VAMC, Dr. Church, Dr. Coste, and Dr. Ligon should have suspected the likelihood that Mr. Mack suffered osteomyelitis of the spine.

24.

VA physicians did not change Mr. Mack's antibiotic therapy in June or July, 2012.

25.

VA physicians did not undertake any measures to evaluate and diagnose Mr. Mack's symptoms in June and July, 2012.

26.

Dr. Ligon ordered an x-ray of Mr. Mack's spine, which was done on July 17, 2012.

27.

X-ray is not an adequate imaging study for detecting osteomyelitis of the spine.

28.

The report from the July 17, 2012 x-ray states that there were no significant findings.

29.

During the period of time in June and July, 2012 when Mr. Mack was under Dr. Ligon's care, she never performed a physical examination on him to determine the cause of Mr. Mack's back pain and gait and balance problems.

30.

During the period of time in June and July, 2012 when Mr. Mack was under Dr. Ligon's care, she did not order any diagnostic tests, other than the July 17, 2012 x-ray, to determine the cause of Mr. Mack's back pain and gait and balance problems.

31.

During the period of time in June and July, 2012 when Mr. Mack was under Dr. Ligon's care, she did not request a consultation from any specialist to determine the cause of Mr. Mack's back pain and gait and balance problems.

32.

On August 5, 2012, Mr. Mack presented to the emergency room at MUMC with a chief complaint of abdominal pain. He underwent an abdominal CT which showed findings consistent with osteomyelitis involving his thoracic spine. He also underwent an MRI of his thoracic spine which, among other findings, showed findings concerning for osteomyelitis and diskitis with epidural abscess.

33.

Mr. Mack was evaluated by a neurosurgeon at MUMC and underwent an emergency laminectomy at T7, T8, T9 and partial laminectomy at T6 and T11, for epidural abscess with cord compression on August 6, 2012. Despite the emergency surgery, Mr. Mack suffered permanent neurological deficits as a result of the epidural abscess.

34.

Currently, Mr. Mack's permanent neurological deficits include paralysis in his legs, neurogenic bowel and bladder, and sexual dysfunction.

35.

As described herein and in the affidavits attached hereto as Exhibit "1" and Exhibit "3", the care and treatment, or lack thereof, which Dr. Church and Dr. Coste rendered to Mr. Mack during his admission to the Charleston VAMC from May 22, 2012 through May 25, 2012 fell below that degree of skill and care ordinarily employed by physicians generally under similar conditions and like circumstances, and caused Mr. Mack's injuries.

36.

As described herein and in the affidavits attached hereto as Exhibit "1" and Exhibit "3", the care and treatment, or lack thereof, which Dr. Church and Dr. Coste rendered to Mr. Mack between May 25, 2012 and August 6, 2012 fell below that degree of skill and care ordinarily employed by physicians generally under similar conditions and like circumstances, and caused Mr. Mack's injuries.

37.

As described herein and in the affidavits attached hereto as Exhibit "2" and Exhibit "3", the care and treatment, or lack thereof, which Dr. Ligon rendered to Mr. Mack between May 25, 2012 and August 6, 2012 fell below that degree of skill and care ordinarily employed by physicians generally under similar conditions and like circumstances, and caused Mr. Mack's injuries.

38.

The affidavits of John C. Schaefer, M.D., Neil J. Farber, M.D., and Todd H. Lanman, M.D. are attached hereto as Exhibits "1" through "3", respectively, pursuant to O.C.G.A. § 9-11-9.1, and are incorporated herein by reference. Said affidavits set forth at least one negligent act or omission by Defendant via its employees and/or agents and/or the direct and proximate result of those negligent acts or omissions with regard to Mr. Mack.

39.

As a direct and proximate result of the negligence of Defendant's employees and/or agents, Mr. Mack: (a) suffers permanent paralysis below the waist and loss of bowel, bladder, and sexual function; (b) endured and will continue to endure pain and suffering; and (c) requires extensive medical and nursing care which he will require for the remainder of his life; and (d) has lost and continues to lose income.

40.

As a direct and proximate result of the negligence of Defendant's agents and employees, Plaintiff Lucinda Mack has been and will continue to be deprived of her husband's consortium, companionship and services.

WHEREFORE, Plaintiffs pray:

(a) That judgment be entered in favor of Plaintiff Terrence E. Mack against Defendant in an amount sufficient to compensate Mr. Mack for his pain and suffering, lost income, and future anticipated medical and related expenses; and

(b) That judgment be entered in favor of Plaintiff Lucinda Mack in an amount sufficient to compensate her for her loss of her husband's consortium, companionship and services; and

(c) That Plaintiffs have such other relief as the Court may deem proper.

BLASINGAME, BURCH, GARRARD
& ASHLEY, P.C.

_____
James B. Matthews, III
Georgia Bar No. 477559
Lee S. Atkinson
Georgia Bar No. 255445

440 College Ave.
P.O. Box 832
Athens, GA 30603
706-354-4000                    **ATTORNEYS FOR PLAINTIFFS**

Attorneys at Law
# BLASINGAME · BURCH
# GARRARD · ASHLEY, P.C.

440 College Ave. N. · P.O. Box 832 · Athens, GA 30603



U.S. POSTAGE
ZIP 30606 $00
0000137765 APR

Clerk, Southern District of Georgia
United States District Court
P.O. Box 8286
Savannah, GA 31412